IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,        :

    Plaintiff,        :
                              Case No. 3:07cr081(9)

vs.        :
                              JUDGE WALTER HERBERT RICE

RAMARIO ARROYO-SALDANA,        :

    Defendant.        :

---

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DOC. #163)

---

Defendant Ramiro Arroyo-Saldana ("Defendant" or "Arroyo-Saldana") is charged in the Fourth Superseding Indictment (Doc. #508) with one count of conspiring to distribute and to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 846, and one count of using a communication facility in the commission of a drug trafficking crime, in violation of 21 U.S.C. § 843(b).

This case is now before the Court on the Defendant's Motion to Suppress Evidence (Doc. #163). With that motion, Arroyo-Saldana requests that the Court suppress any evidence that was seized when the Jeep Cherokee he was driving was stopped and subsequently searched by police officers, on February 20, 2007, and any evidence that was seized when a search warrant was executed at his

residence, located at 65 Burkhardt Avenue, Dayton, Ohio. On November 30, 2007, this Court conducted an oral and evidentiary hearing on Defendant's motion. The parties have filed their memoranda in support of and in opposition to that motion. See Docs. ## 374, 560 and 570. The Court now rules on the Defendant's Motion to Suppress Evidence (Doc. #163), addressing his request that the Court suppress the fruits of the stop of the Jeep Cherokee, before turning to the search of his residence.

I. Stop and Search of the Jeep Cherokee

At approximately 3:30 p.m., on February 19, 2007,[1] Officers Matthew Kennard ("Kennard") and William McReynolds ("McReynolds") of the Dayton, Ohio, Police Department stopped the Jeep Cherokee that Arroyo-Saldana was driving.[2] The Defendant argues that the Court must suppress the fruits of the stop and search of the Jeep Cherokee, because the seizure of that vehicle violated his rights under the Fourth Amendment. In particular, Defendant contends that Kennard and McReynolds lacked probable cause to believe that the Jeep Cherokee had committed a traffic offense and, further, they were without reasonable suspicion to believe that he (Arroyo-Saldana) was engaged in criminal activity. The Government, not surprisingly, disagrees with both points.

---

[1]The evidence is inconsistent on whether the events described below occurred on February 19, 2007, or the following day, February 20th. This Court finds that they occurred on February 19th, because that date was used in the affidavit with which the search warrant was obtained.

[2]Kennard and McReynolds stopped that vehicle in response to a request for other officers assigned to a drug task force, who wanted to know the identity of its driver.

The Court overrules this branch of Defendant's Motion to Suppress Evidence (Doc. #163), without resolving the question of whether the stop of the Jeep Cherokee violated his rights under the Fourth Amendment. Although that vehicle was thoroughly searched, after it had been stopped, officers did not discover controlled substances, drug paraphernalia, money or other physical evidence during that search.³ The only evidence discovered by law enforcement as a result of stopping the Jeep Cherokee was the Defendant's identity. However, in <u>United States v. Navarro-Diaz</u>, 420 F.3d 581 (6th Cir. 2005), the Sixth Circuit held that the identity of a defendant is not suppressible, regardless of whether that information was obtained in violation of his Fourth Amendment rights. Therefore, even if the stop violated the Fourth Amendment rights of Arroyo-Saldana, there is no basis for suppressing his identity.

Accordingly, the Court overrules the branch of Defendant's Motion to Suppress Evidence (Doc. #163), arising out of the stop of the Jeep Cherokee on February 19, 2007.

II. <u>Search of Defendant's Residence at 65 Burkhardt Avenue</u>

On May 7, 2007, Special Agent Steven Lucas ("Lucas") of the Drug Enforcement Administration ("DEA") appeared before Magistrate Judge Michael Merz and executed an affidavit, with which he obtained warrants authorizing officers to search Defendant's residence at 65 Burkhardt Avenue, as well as a

---

³For instance, Kennard testified that nothing was seized from the Jeep Cherokee and that no information, other than Defendant's identity, was discovered as a result of the stop of the vehicle. Transcript of November 30, 2007, Oral and Evidentiary Hearing (Doc. #362) at 37. <u>See</u> also, <u>Id</u>. at 46 (Kennard confirming that neither drugs nor money were found in the Jeep Cherokee).

number of other properties.[4] The Defendant has moved to suppress the evidence that was seized when that search warrant was executed, arguing that Lucas' affidavit failed to establish probable cause to believe that contraband or evidence of a crime would be found at 65 Burkhardt Avenue. The Government has not responded to this branch of the Defendant's motion.[5] The Court now rules on same, beginning its analysis by reviewing the standards it must apply, whenever it rules on a request to suppress the evidence, seized when a search warrant was executed, on the theory that the warrant was not supported by probable cause.

In <u>United States v. Smith</u>, 182 F.3d 473 (6th Cir. 1999), the Sixth Circuit restated certain fundamental principles that a court must apply when a defendant argues that evidence, seized upon the execution of a search warrant, must be suppressed, because the supporting affidavit did not establish the existence of probable cause:

> The Fourth Amendment, which states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," U.S. CONST. amend. IV, requires that probable cause be determined "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out federal crime." <u>Johnson v. United States</u>, 333 U.S. 10, 14 (1948). In order for a magistrate to be able to perform his official function, the affidavit must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant. <u>Whiteley v. Warden</u>, 401 U.S. 560, 564 (1971). Probable cause is defined as "reasonable grounds for belief, supported by less than <u>prima facie</u> proof but more than mere

---

[4] The Application and Affidavit for Search Warrant is Government's Exhibit 1.

[5] In addition to its Post-Hearing Memorandum (Doc. #560), in which it addressed only the branch of Defendant's motion directed at the stop of the Jeep Cherokee, the Government filed a response to Defendant's Motion to Suppress (Doc. #163), the day it was filed. <u>See</u> Doc. #164. Therein, the Government merely requested that it be permitted to file a memorandum opposing the Defendant's motion after an oral and evidentiary hearing has been conducted.

> suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). It
> requires "only a probability or substantial chance of criminal activity, not an
> actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 244 n. 13
> (1983). A warrant must be upheld as long as the magistrate had a
> "substantial basis for … conclud[ing] that a search would uncover evidence
> of wrongdoing…." Id. at 236. See also United States v. Finch, 998 F.2d
> 349, 352 (6th Cir. 1993).

Id. at 476-77. In Illinois v. Gates, 462 U.S. 213, 230 (1983), the Supreme Court stressed that the existence of probable cause must be determined from the totality of the circumstances. In Smith, the Sixth Circuit elaborated upon Gates:

> As the Supreme Court indicated in Gates, although "veracity,"
> "reliability," and "basis of knowledge" are highly relevant in assessing the
> value of an informant's tip, these elements should not be understood as
> "entirely separate and independent requirements to be rigidly exacted in
> every case." 462 U.S. at 230. Instead, they should be understood as
> "closely intertwined issues that may usefully illuminate the commonsense,
> practical question" of whether an informant's tip establishes probable cause.
> Id. Therefore, under a "totality of the circumstances" approach, a deficiency
> in one of these areas "may be compensated for, in determining the overall
> reliability of [an informant's] tip, by a strong showing as to the other, or by
> some other indicia of reliability." Id. at 233. The Court in Gates concluded
> that "the duty of a reviewing court is simply to ensure that the magistrate
> had a 'substantial basis for … conclud[ing]' that probable cause existed."
> Id. at 238-39. The court must ensure that the magistrate was informed of
> some of the underlying circumstances from which the informant concluded
> evidence of a crime is where he claimed it would be found, and some of the
> underlying circumstances from which the officer concluded that the
> informant, whose identity need not be disclosed, was reliable. Aguilar [v.
> Texas, 378 U.S. 108, 114 (1964)].

182 F.3d at 477-78. See also Gates, 462 U.S. at 238 (noting that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place"). See also, United States v. Laughton, 409 F.3d 744, 747 (6th

Cir. 2005). When determining whether Lucas' affidavit established the existence of probable cause to believe that contraband or evidence of criminal activity would be found at the place to be searched, this Court must examine the totality of those circumstances in a "realistic and commonsense fashion." United States v. Van Shutters, 163 F.3d 331, 336 (6th Cir. 1998), cert. denied, 526 U.S. 1077 (1999). Of course, this Court also must afford great deference to the determination of probable cause made by Judge Merz, who issued the search warrant. United States v. Allen, 211 F.3d 970 (6th Cir.) (en banc), cert. denied, 531 U.S. 907 (2000); United States v. Akram, 165 F.3d 452, 456 (6th Cir. 1999). See also, United States v. Graham, 275 F.3d 490, 501 (6th Cir. 2001) (indicating that a magistrate's finding of probable cause will not be set aside, unless it was arbitrary).

Where, as in the present case, oral testimony was not presented to the magistrate who issued the warrant, the existence of probable cause to support that warrant must be ascertained exclusively from the four corners of the affidavit.[6] See e.g., Whiteley v. Warden, 401 U.S. 560, 565 n. 8 (1971); United States v. Vigeant, 176 F.3d 565, 569 (1st Cir. 1999); United States v. Etheridge, 165 F.3d 655, 656 (8th Cir. 1999); United States v. Weaver, 99 F.3d 1372, 1377 (6th Cir. 1996).

In his affidavit, Lucas sets forth information which establishes probable cause to believe that Daniel Garcia-Guia, aka Comino, and others, including Jose

---

[6]Accordingly, when ruling on the Defendant's request to seize the property which was seized from 65 Burkhardt Avenue, this Court will not consider Lucas' testimony about Arroyo-Saldana's alleged connection to the alleged drug conspiracy charged in this prosecution.

Garcia-Guia, aka Negro, were involved in the distribution of cocaine.[7] While not challenging that, Arroyo-Saldana argues that Lucas' affidavit fails to establish probable cause to believe that <u>he</u> has been involved in drug trafficking or that there is a nexus between his allegedly suspicious activity and his residence at 65 Burkhardt Avenue.[8] As a means of an analysis, this Court will initially decide whether Lucas' affidavit established probable cause to believe that Arroyo-Saldana was involved in drug trafficking, following which it will turn to the question of whether that affidavit established a nexus between 65 Burkhardt Avenue and that alleged activity.[9]

---

[7] Daniel Garcia-Guia and Jose Garcia-Guia are brothers and Defendants in this prosecution. In his affidavit, Lucas refers to the two respectively as Daniel Garcia and Jose Garcia. Herein, this Court uses the names by which the two have been identified in the Fourth Superseding Indictment (Doc. #508), i.e., Daniel Garcia-Guia and Jose Garcia-Guia.

[8] Defendant argues that, since law enforcement learned his identity as a result of the illegal stop of the Jeep Cherokee, this Court must strike references to him from Lucas' affidavit. Doc. #374 at 7. Given that the Court has concluded above that the Defendant's identity is not suppressible, regardless of whether that information was obtained as a result of a violation of the Fourth Amendment, it declines to strike Defendant's identity from the affidavit.

[9] Parenthetically, this Court does not understand the Defendant to be arguing that Lucas' affidavit failed to establish probable cause to believe that 65 Burkhardt Avenue is his (Defendant's) residence. Such an argument could have proved fatal to the Defendant's request to suppress the evidence seized from that location, since the only evidence before the Court, establishing that Defendant had a reasonable expectation of privacy in that location and, thus, standing to seek the suppression of the fruits of its search, are the statements in Lucas' affidavit that the house is Defendant's residence.

A. Probable Cause to Believe Defendant was Engaged in Drug Trafficking

In ¶ 19 of his affidavit, Lucas set forth information attempting to link Defendant to the alleged drug trafficking organization, including Daniel Garcia-Guia and others:

> 19. On February 19, 2007, [t]he DEA Dayton RO captured an electronic intercept between Daniel GARCIA and a subject later identified as Ramiro ARROYO-SALDANA, aka "GODFATHER." On one of the captured calls on cellular phone 614-599-2868[,] Daniel GARCIA is told by "GODFATHER'" that it will take an hour to wrap the "tamales" and then "GODFATHER" will go to Jose GARCIA'S aka NEGRO'S garage. Your Affiant believes this intercept as well as others between Daniel GARCIA and "GODFATHER" are related to narcotic trafficking activity that was going to take place at the residence of Jose GARCIA aka NEGRO, in a rear garage. Based upon the intercepts[,] the DEA Dayton RO conducted surveillance at 711 Creighton Street, Dayton, Ohio[,] the suspected residence-garage for Jose GARCIA aka NEGRO. At approximately 1:31 PM, your Affiant observed a black Taurus enter a rear garage at 711 Creighton Street, Dayton, Ohio. The registration plate on the on the black Ford was observed by your Affiant as Texas registration plate 316-TGT. The registration plate came back to 4649 Loma Escondida, El Paso, Texas 79934. At approximately 2:15 PM, S/A Lucas observed the black Ford Taurus bearing the above registration plate exit the garage and depart the area. DEA Dayton investigators conducted surveillance and observed the Taurus with a heavy set Hispanic male driver go to the Motel 6 parking lot located at 1212 Main Street, Englewood, Ohio. At approximately 2:43 PM, TFO Bill Toney observed the heavy set Hispanic male driver[,] later identified as Ramiro ARROYO-SALDANA, aka Godfather (sic)[,] exit the Taurus and place an unknown object into a maroon Jeep Cherokee. Godfather (sic) was then observed by TFO Toney entering Room 103 at the Motel 6. A short time later[,] TFO Toney observed Godfather (sic) exit the room and enter into the maroon Jeep. The Jeep was then observed departing the Motel 6 parking lot and was later stopped by Dayton Police for having a license plate obscured. The driver was identified by a Washington State ID and did not have a valid driver's license[.] [] [] [The] vehicle was impounded[,] and [Arroyo-Saldana] was cited and allowed to leave the area on foot.

Government Exhibit 1 at ¶ 19. It should be noted that, elsewhere in his affidavit, Lucas mentioned Jose Garcia-Guia's residence and garage, located at 711

Creighton Street, in connection with alleged drug trafficking activities. Id. at ¶ 17.
In addition, Jose Garcia-Guia's alleged activities in the drug organization are also
detailed elsewhere in Lucas' affidavit. Id. at ¶ 11 (discussing an intercepted
telephone call from Daniel Garcia-Guia to Jose Garcia-Guia during which the former
told the latter to be ready to work the next day, while other paragraphs in that
affidavit indicate that the delivery of 25 kilograms of cocaine was expected that
day); ¶ 17 (describing intercepted telephone call on February 9, 2007, between
Daniel Garcia-Guia and Jose Garcia-Guia, during which the latter told the former an
individual involved who supplied narcotics would be coming to his residence (Jose
Garcia-Guia's) to meet with the two). In ¶ 37, Lucas once again addressed the
Defendant's role in the alleged drug trafficking organization led by Daniel Garcia-
Guia:

> 37. On April 13, 2007, [y]our Affiant performed a spot check of 65
> Burkhardt Avenue, Dayton, Ohio. You[r] Affiant observed a purple Jeep[,]
> bearing Ohio registration plate DUH2102[,] in the rear drive. (NOTE: This is
> the same vehicle utilized by Ramiro ARROYO-SALDANA, aka Godfather
> (sic)[,] and this is his known residence.) Your Affiant also observed a black
> Honda bearing Ohio registration plate EAD6056. The vehicle is known to be
> utilized by various associates of Daniel GARCIA. Your Affiant believes that
> the vehicle may contain a hidden compartment to conceal contraband.
> Furthermore, several of the captured wire communications between Daniel
> Garcia and Ramiro ARROYO-SALDANA, aka GODFATHER were captured
> over the land line telephone number for 65 Burkhardt Avenue, Dayton, Ohio.

Id. at ¶ 37.[10] See also Id. at ¶ 56 (noting that the telephone number for 65
Burkhardt Avenue was used by Arroyo-Saldana). Those are the only mentions of
Arroyo-Saldana and/or his residence at 65 Burkhardt Avenue, which attempt to link
either to the alleged cocaine distribution organization.

---

[10]In addition, Daniel Garcia-Guia was seen riding as a passenger in the black Honda
on the same day, April 13, 2007. Government Exhibit 1 at ¶ 39.

Initially, Defendant argues that the only information in Lucas' affidavit linking him to drug trafficking is based upon intercepted telephone calls. As can be seen from ¶ 19 of that affidavit, the entirety of which is quoted above, Lucas had to interpret code language used by the participants of those telephone conversations, in order to conclude that drug trafficking was the subject of those conversations. According to Arroyo-Saldana, the information in ¶ 19 is not sufficient to establish probable cause to believe that he was engaged in drug trafficking, because, when Lucas described his background, he failed to set forth anything that would substantiate his belief that Daniel Garcia-Guia and Jose Garcia-Guia were discussing a drug transaction. Although this Court agrees with the Defendant that Lucas did not expressly state in his affidavit that he was experienced or trained in interpreting the codes used by drug traffickers in an effort to disguise the accurate meaning of their conversations, the Court concludes that Lucas' experience and training, which are discussed in the following paragraph, gave him the ability to interpret the telephone conversation between Defendant and Daniel Garcia-Guia.

In his affidavit, Lucas described his experience and training, including nearly two years as a DEA agent, ten years as a sworn police officer in Indiana, during which he spent about four years as an agent on the DEA's High Intensity Drug Trafficking Area Task Force in Crown Point, Indiana, and his extensive training in the investigation of drug trafficking from the Indiana Law Enforcement Academy, the DEA and ongoing in-service training. Id. at ¶¶ 2-3. Lucas also set forth the various tasks he had performed by virtue of his employment as a Special Agent with the DEA, including functioning as an undercover agent for the purpose of intelligence on drug trafficking and the inner workings of drug organizations. Id. at

¶ 5.  Quite simply, that information is sufficient to cause the Court to conclude that, by virtue of his training and experience, Lucas was able to interpret the codes used by those involved in drug trafficking.

Based upon Lucas' statement in ¶ 19 of his affidavit, that the conversation between Daniel Garcia-Guia and the Defendant concerned drug trafficking activity, this Court concludes there was probable cause to believe that Arroyo-Saldana was indeed engaged in drug trafficking on February 19, 2007.  Other information contained in Lucas' affidavit lends support to that conclusion.  For instance, the Defendant was seen at Jose Garcia-Guia's garage on that date.[11]

A.  <u>Probable Cause to Believe that Evidence of Drug Trafficking Would Be Found at 65 Burkhardt Avenue</u>

Of course, merely because officers had probable cause to believe that the Defendant had engaged in drug trafficking activity on February 19, 2007, does not mean that they also had probable cause to believe that evidence of such criminal activity would be found at 65 Burkhardt Avenue approximately two and one-half months later, when Lucas executed his affidavit.  In <u>United States v. McPhearson</u>, 469 F.3d 518 (6th Cir. 2006), the Sixth Circuit reviewed the standards which must be applied to determine whether an affidavit executed in support of a search warrant established probable cause to believe that contraband or evidence of a crime would be found inside the place to be searched:

---

[11]It will be remembered that, during an intercepted telephone call on February 19, 2007, Daniel Garcia-Guia told the Defendant that he (Arroyo-Saldana) would be going to Jose Garcia-Guia's residence in one hour, after the "tamales" had been wrapped.

> "For the magistrate to be able to properly perform this official function, the affidavit presented [in support of the search warrant] must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant." [United States v.] Weaver, 99 F.3d [1372, 1376 (6th Cir. 1996)]. The affidavit must contain particularized facts demonstrating "a fair probability that evidence of a crime will be located on the premises of the proposed search." [United States v.] Frazier, 423 F.3d [526, 531 (6th Cir. 2005)]. This requires "a nexus between the place to be searched and the evidence sought." United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (internal quotation omitted). In other words, the affidavit must suggest "that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought" and not merely "that the owner of property is suspected of crime." Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978).

Id. at 524. Of course, "a suspect's mere presence or arrest at a residence is too insignificant a connection with that residence to establish that relationship necessary to a finding of probable cause." United States v. Savoca, 761 F.2d 292, 297 (6th Cir. 1985) (internal quotation marks and citation omitted). See also, United States v. Frazier, 423 F.3d 526, 533 (6th Cir. 2005) (noting that "the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence").

Applying those standards to the information contained in Lucas' affidavit, this Court concludes that such information failed to demonstrate existence of probable cause to believe that the requisite nexus between evidence of drug trafficking and 65 Burkhardt Avenue existed. An examination of the facts of McPhearson demonstrates that point. Therein, officers traveled to the defendant's residence to arrest him on a warrant charging him with simple assault. He was taken into custody on the front porch of his house. During the search incident to the arrest, officers discovered crack cocaine in one of McPhearson's pockets.

Based upon that information, officers were able to secure a warrant, authorizing them to search that residence. The Sixth Circuit concluded that finding crack cocaine in the defendant's pockets was not sufficient to establish a nexus between the place to be searched and the evidence to be sought.

Moreover, although the Sixth Circuit has held that evidence of drug trafficking activity is likely to be found where drug dealers live (see, e.g., United States v. Miggins, 302 F.3d 384, 393-94 (6th Cir. 2002) (and cases cited therein); United States v. Jones, 159 F.3d 969 (6th Cir. 1998)), Lucas did not demonstrate in his affidavit that Arroyo-Saldana was a drug dealer. Rather, he merely established probable cause to believe that the Defendant had been involved in one incident of drug trafficking, at a different location than 65 Burkhardt Avenue, about two and one-half months before Lucas executed the affidavit with which he was able to secure the search warrant. Similarly, the Sixth Circuit held in McPhearson that evidence the defendant possessed crack cocaine in his pants pocket, outside his residence, on the day the search warrant was obtained was insufficient to demonstrate that he was a drug dealer and raise the inference that evidence of his activity would be found in his residence.

Based upon the foregoing, this Court concludes that Lucas' affidavit failed to establish probable cause to believe that contraband or evidence of drug trafficking would be found at 65 Burkhardt Avenue. However, in United States v. Leon, 468 U.S. 897 (1984), the Supreme Court modified the exclusionary rule "so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." Id. at 905. See also, United States v. Czuprynski, 46 F.3d 560 (6th Cir. 1995) (en banc). The Leon Court also

held that the good faith exception to the exclusionary rule would not apply under the following circumstances, to wit: 1) when the search warrant was obtained in violation of Franks v. Delaware, 438 U.S. 154 (1978); 2) when the issuing magistrate has failed to act in a neutral and detached fashion; 3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and 4) when the warrant is so facially deficient (i.e., it fails to describe the particular place to be searched or the items to be seized) that the executing officers could not have reasonably presumed that it was valid. 468 U.S. at 923.[12] Herein, there is no indication that the search warrant was issued in violation of Franks, that Judge Merz failed to act in a neutral and detached fashion or that the search warrant was facially deficient. Therefore, the Court turns to the question of whether Lucas affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id.

Recently, in United States v. Pauli, — F.3d —, 2009 WL 48212 (6th Cir. 2009), the Sixth Circuit noted that the affidavit in support of the search warrant in that prosecution "fits comfortably within the Leon good-faith exception," given that it was not a "bare bones" affidavit and, thus, "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Similarly, in United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004) (en banc), the

---

[12]Even though the Government did not address this branch of Defendant's motion in its post-hearing memorandum and, thus, did not raise Leon, this Court properly raises the good faith exception to the exclusionary rule, since the defendant has the burden of demonstrating that one of the four exceptions to Leon is applicable and that, therefore, the officer did not rely on the warrant in good faith. United States v. Otero, 495 F.3d 393, 398 (7th Cir.), cert. denied, 128 S.Ct. 495 (2007).

Sixth Circuit found this Leon exception to be inapplicable where facts set forth in the affidavit, albeit insufficient to establish probable cause, "were not so vague as to be conclusory or meaningless." A "bare bones" affidavit is similar to, if not the same as a conclusory affidavit, "one which states only the affiant's belief that probable cause existed." United States v. Williams, 224 F.3d 530, 533 (6th Cir. 2000), cert. denied, 531 U.S. 1095 (2001). Herein, Lucas' affidavit is not conclusory, merely setting forth his belief that probable cause existed; rather, on the contrary, Lucas provided information therein which is sufficient to establish probable cause to believe that the Defendant had been involved in one incident of drug trafficking. In addition, Lucas demonstrated a link between the Defendant and 65 Burkhardt Avenue, by indicating that he received telephone calls there and that a vehicle he had driven was parked there. In short, the affidavit at issue herein is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

Accordingly, the Court concludes that, in accordance with Leon, the evidence seized from 65 Burkhardt Avenue cannot be suppressed, even though Lucas' affidavit did not establish probable cause to believe that contraband or evidence of drug trafficking would be found therein.[13]

---

[13]Given that the one incident of drug activity by the Defendant, discussed by Lucas in his affidavit, occurred more than two and one-half months before the search warrant was issued, one could argue that this information was so stale as to render official belief in the existence of probable cause unreasonable and, thus, that the Leon exception to the exclusionary rule is inapplicable. See e.g., United States v. Hython, 443 F.3d 480 (6th Cir. 2006) (concluding that, since the one incident of criminal activity by the defendant described in the affidavit was undated, that information was so stale as to render official belief in the existence of probable cause unreasonable and that, therefore, Leon was inapplicable). Under the facts of this prosecution, this Court would reject such an proposition. In determining

Based upon the foregoing, the Court overrules the Defendant's Motion to Suppress Evidence (Doc. #163).

February 2, 2009

                                           /s/ Walter Herbert Rice
                                       WALTER HERBERT RICE, JUDGE
                                       UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.

---

whether information in an affidavit executed in support of a search warrant is stale, courts will consider, <u>inter</u> <u>alia</u>, the nature and duration of the offense. <u>United States v. Gardiner</u>, 463 F.3d 445, 471 (6th Cir. 2006). The search warrant for 65 Burkhardt Avenue was issued to search for evidence of the distribution of cocaine. The Sixth Circuit has recognized that evidence of drug trafficking activity does not become stale with the passage of time, as does evidence of other criminal activity. <u>United States v. Greene</u>, 201 F.3d 471 (6th Cir. 2001); <u>United States v. Spikes</u>, 158 F.3d 913, 923 (6th Cir. 1998). Moreover, although Lucas' affidavit did not set forth information that Arroyo-Saldana continued in drug trafficking activity after the incident occurring on February 19, 2007, it did contain information that Daniel Garcia-Guia was engaged in such activity after that date, as well as information linking the Defendant to Daniel Garcia-Guia after said date. Accordingly, this Court cannot conclude that the fact that the one incident of drug activity by the Defendant, discussed by Lucas in his affidavit, occurred more than two and one-half months before the search warrant was issued renders official belief in the existence of probable cause unreasonable, thus rendering <u>Leon</u> inapplicable.

- 16 -